UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK



UNITED STATES OF AMERICA,

v.  **DECISION AND ORDER**

EDWIN T. MURRAY,  6:14-CR-06183 EAW

Defendant.

Defendant Edwin T. Murray ("Defendant") is charged in a four-count indictment as follows: (1) possession of cocaine with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C); (2) use of a premises to manufacture, distribute, and use a controlled substance, in violation of 21 U.S.C. § 856(a)(1); (3) possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i); and (4) being an armed career criminal in possession of firearms and ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). (Dkt. 10). By text order dated December 4, 2014, this case was referred to Hon. Jonathan W. Feldman, United States Magistrate Judge, pursuant to 28 U.S.C. §§ 636(b)(1)(A) and (B). (Dkt. 11).

Defendant has filed objections to Magistrate Judge Feldman's Report & Recommendation denying Defendant's motion to suppress statements. (Dkt. 34). After reviewing the parties' original pretrial motion submissions (Dkt. 17 & 18), the transcript of the suppression hearing (Dkt. 24), the parties' post-hearing submissions (Dkt. 26 & 30), Magistrate Judge Feldman's Report & Recommendation (Dkt. 33), and Defendant's

objections to the Report & Recommendation (Dkt. 34), the Court adopts the Report & Recommendation in its entirety.

## **PROCEDURAL HISTORY**

Defendant was indicted on December 2, 2014. (Dkt. 10). On March 16, 2015, Defendant filed omnibus pretrial motions that included a motion to suppress statements made by Defendant during and shortly after his arrest on August 20, 2014. (Dkt. 17 at 5-7). The Government responded on March 30, 2015. (Dkt. 18).

Magistrate Judge Feldman scheduled a hearing on Defendant's motion to suppress for May 4, 2015. At that hearing, the Government called Investigator Scott Ferro ("Investigator Ferro"), employed by the City of Rochester Police Department. (Dkt. 24 at 3-4). Defendant called his wife Chris Murray ("Ms. Murray"). (*Id.* at 53). Magistrate Judge Feldman permitted the parties to submit post-hearing submissions addressing the fact that Defendant was allegedly represented by an attorney at the County Public Defender's office at the time the search warrant on the instant case was executed. (*Id.* at 85-87). Defendant filed his supplemental submission on June 30, 2015, summarizing the evidence at the hearing and arguing that Defendant's statements during and shortly after his arrest were made in violation of his *Miranda* rights and not voluntary. (Dkt. 26). Defendant indicated that he was not pursuing suppression based on any violation of his Sixth Amendment rights. (*Id.* at 6). The Government responded on July 28, 2015. (Dkt. 30).

On October 26, 2015, Magistrate Judge Feldman issued a thorough Report & Recommendation, denying Defendant's motion to suppress. (Dkt. 33). Defendant filed

objections on November 9, 2015, at which time the Court took the Report & Recommendation under advisement.

## DISCUSSION

I.   **Legal Standard**

A district court reviews any specific objections to a report and recommendation under a *de novo* standard. Fed. R. Crim. P. 59(b)(3); *see also* 28 U.S.C. § 636(b)(1) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."); *United States v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir. 1997) (court must make a *de novo* determination to the extent that a party makes specific objections to a magistrate's findings). To trigger the *de novo* review standard, objections to a report "must be specific and clearly aimed at particular findings in the magistrate judge's proposal." *Molefe v. KLM Royal Dutch Airlines*, 602 F. Supp. 2d 485, 487 (S.D.N.Y. 2009). Following review of the report and recommendation, the district judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

Further, "[t]he Second Circuit has instructed that where a Magistrate Judge conducts an evidentiary hearing and makes credibility findings on disputed issues of fact, the district court will ordinarily accept those credibility findings." *United States v. Lawson*, 961 F. Supp. 2d 496, 499 (W.D.N.Y. 2013); *see also Carrion v. Smith*, 549 F.3d 583, 588 (2d Cir. 2008) ("[A] district judge should normally not reject a proposed finding of a magistrate judge that rests on a credibility finding without having the witness testify

before the judge.") (quoting *Cullen v. United States*, 194 F.3d 401, 407 (2d Cir. 1999)); *Grassia v. Scully*, 892 F.2d 16, 19 (2d Cir. 1989) ("Had the district court rejected the magistrate's conclusions regarding the credibility of the central witnesses without hearing live testimony from those witnesses, troubling questions of constitutional due process would have been raised.").

## II.  Defendant's Motion to Suppress Statements

Defendant contends that two sets of statements should be suppressed. Defendant seeks suppression of oral statements he made during his arrest at 54 Miller Street relating to the ownership and location of the drugs found in his residence, because he was not read his *Miranda* rights prior to making those statements. (Dkt. 34 at 3). Defendant further contends that oral and written statements he made at the Rochester Public Safety Building following his arrest indicating that the drugs found at his residence belonged to him, that his wife was not involved with the drugs, and that he obtained the rifle found in his residence from a "guy who came knocking on his door," should also be suppressed because they were coerced and not voluntarily made. (*Id.* at 5).

### A.  Defendant's Statements at 54 Miller Street

In *Miranda v. Arizona*, the United States Supreme Court held that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." 384 U.S. 436, 444 (1966). The safeguards ensured by *Miranda* do not apply at all times. Rather, "[t]he *Miranda* safeguards apply only to 'custodial interrogations.' That phrase has two components: the

'in custody' requirement . . . and the 'interrogation' requirement." *Jackson v. Conway*, 763 F.3d 115, 136-37 (2d Cir. 2014) (internal citations omitted). The parties agree that Defendant was in custody at the time he made the statements at 54 Miller Street. Thus, the dispute is whether Defendant was being interrogated at the time, or whether his statements were spontaneous, voluntary admissions.

Investigator Ferro testified at the suppression hearing that he and other officers found Defendant in a bedroom, took him into custody, and seated him on the floor. (Dkt. 24 at 7-9). According to Investigator Ferro, as he began searching the bedroom, Defendant said "it's under the bed, it's under the bed." (*Id.* at 9). Investigator Ferro looked under the bed and found a shoebox containing cocaine, after which Defendant said "it's mine, my wife has nothing to do with it." (*Id.*). Investigator Ferro testified that he told Defendant to "hold on a second, relax," and that he would talk to Defendant later downtown. (*Id.*). Defendant continued to state that the drugs belonged to him and not to his wife. (*Id.*). Officer Least, who was also at the scene, eventually took Defendant outside to sit in a police car. (*Id.*). Investigator Ferro denied asking Defendant any questions before Defendant made admissions relating to the location and ownership of the cocaine. (*Id.*).

Defendant did not testify in support of his motion to suppress. Rather, Defendant submitted an affidavit in support of his motion, which is attached to Defendant's objections as Exhibit 2. (Dkt. 34 at 22-23). In his affidavit, Defendant states that he was questioned before he made any admission, and that after he was seated on the floor of the bedroom, one of the officers asked him "[w]here is it at? You know what I'm looking

for." (*Id.* at 22). Defendant contends that he "nodded to under the bed, where [he] knew there were drugs in a small box." (*Id.*).

Ms. Murray, who was seated in the kitchen of 54 Miller Street at the time Defendant and the officers were in the bedroom (Dkt. 24 at 55), testified that she was not able to speak with Defendant during that time (*id.* at 56). Ms. Murray also testified that she could hear Defendant and the officers conversing in the bedroom, but that she could not hear what they were saying (*id.* at 76-77).

After reviewing the record of the suppression hearing and Defendant's affidavit, the Court concludes that Defendant's statements were voluntary, spontaneous admissions, and that Defendant was not being interrogated at the time the statements were made.

"The Supreme Court has explained that interrogation can take the form of 'express questioning' or its 'functional equivalent,' which includes 'words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect.'" *United States v. Broughton*, 600 F. App'x 780, 783 (2d Cir. 2015) (quoting *Rhode Island v. Innis*, 446 U.S. 291, 300-01 (1980)). "'The latter portion of this definition focuses primarily upon the perceptions of the suspect, rather than the intent of the police.'" *Acosta v. Artuz*, 575 F.3d 177, 189 (2d Cir. 2009) (quoting *Innis*, 446 U.S. at 301). "Nevertheless, the [*Innis*] Court declined to hold the police accountable for the unforeseeable results of their words or actions . . . Thus, police conduct would not qualify as interrogation simply because it struck a responsive chord in a defendant . . .

Rather, [i]t must also be established that a suspect's incriminating response was the product of words or actions on the part of the police that they should have known were reasonably likely to elicit an incriminating response." *Id.* (internal quotations and citations omitted) (alteration in original). Accordingly, "[i]n evaluating whether interrogation has violated the protections afforded by *Miranda,* we must consider police conduct in light of the totality of the circumstances in assessing whether the police should have known that their actions were reasonably likely to elicit an incriminating response." *United States v. Stroman,* 420 F. App'x 100, 102 (2d Cir. 2011) (internal quotations and citations omitted). "Absent an interrogation, there can be no infringement of the Fifth Amendment rights *Miranda* was designed to protect." *Jackson,* 763 F.3d at 137.

Spontaneous statements made by a defendant are not the product of an interrogation as defined by *Miranda. United States v. Vigo,* 487 F.2d 295, 300 (2d Cir. 1973); *see also United States v. Colon,* 835 F.2d 27, 28 (2d Cir. 1987) (*Miranda* inapplicable where the inculpatory statement is spontaneous and did not result from interrogation or its functional equivalent). The hearing testimony is clear that Defendant made statements relating to the location and his ownership of the drugs before the officers asked him any questions. Further, Defendant continued making admissions regarding his ownership of the drugs even after the officers instructed him to refrain from speaking.

Defendant contends that the officers' conduct in conducting the search in his presence rises to the level of being reasonably likely to elicit an incriminating response. (Dkt. 34 at 5). Defendant's argument in this regard is unsupported by case law from

within the Second Circuit. *See United States v. Figueroa*, 300 F. App'x 93, 95 (2d Cir. 2008) (the defendant's statements were not made in response to express questioning or its functional equivalent; rather, the defendant's statements were made "while the officers were going about their routine tasks in conducting a search, securing a crime scene, and making an arrest. The district court did not find, nor does the record suggest, that the officers made any statements or took any actions that they should have known were reasonably likely to elicit an incriminating response."); *United States v. Hemingway*, No. 05-CR-6108L, 2007 U.S. Dist. LEXIS 102656, at *11-12 (W.D.N.Y. Feb. 13, 2007) (statements made by the defendant seeking to exculpate his brother after narcotics were found in their kitchen during execution of search warrant were spontaneous under *Innis*, because the officer could not have reasonably anticipated that his response to the defendant's brother's question of what he would be charged with, would elicit an incriminating response from the defendant).

Similarly, any admissions made by Defendant prompted by concern for his wife are not the product of interrogation. *United States v. Plaza*, No. 10-CR-6096, 2014 U.S. Dist. LEXIS 175647, at *11-12 (W.D.N.Y. Nov. 21, 2014) (finding that the defendant's statement that "[t]hat shit is mine, not hers," was spontaneous and not the production of police questioning; "[t]hough [the defendant] may have felt that [the agent's] seizure of the drugs found in the safe during the search of the residence required an admission in order to exculpate [his girlfriend] from criminal liability, his inculpatory statement was neither coerced nor involuntary and the choice to make such a statement was his and was not the product of police questioning."); *United States v. Mitchell*, No. 11-CR-6019, 2012

U.S. Dist. LEXIS 134895, at *7 (W.D.N.Y. Aug. 16, 2012) ("While [the defendant] may have felt the discovery of drugs and a firearm during the search of the residence deserved an explanation in order to exculpate [his girlfriend] from criminal liability, the choice to offer an explanation was his and was not the product of interrogation or its functional equivalent.").

Defendant argues that his affidavit contradicts Investigator Ferro's testimony that Defendant was not asked any questions before he told the officers where the drugs were located and that they belonged to him. (Dkt. 34 at 3). Defendant's contention that he was asked where the drugs were located before he made any statements to the officers is unsupported by the record, as neither Investigator Ferro nor Ms. Murray confirmed Defendant's version of events. Rather, Defendant's position is supported by only a self-serving affidavit, which was not subject to cross-examination. *United States v. Robles*, 253 F. Supp. 2d 544, 549 n.14 (S.D.N.Y. 2002) (courts "'give greater weight to [witness] testimony, which was subject to cross examination, than to [sworn] affidavits'") (quoting *United States v. Gardner*, 611 F.2d 770, 774 n.2 (9th Cir. 1980)) (alterations in original); *United States v. Juliano*, No. 99 Cr. 1197 (AGS), 2000 U.S. Dist. LEXIS 12149, *9 n.1 (S.D.N.Y. Aug. 24, 2000) (affording less weight to the defendant's affidavit, because the court could not assess the defendant's credibility and the testimony of Government witnesses was "forthright and truthful") (citing *United States v. Frank*, 8 F. Supp. 2d 284, 291 (S.D.N.Y. 1998)). While the Court has considered Defendant's affidavit, the fact that it was not subject to cross-examination, coupled with the fact that the hearing testimony does not support his version of events, leads the Court to conclude that

Defendant's statements made at 54 Miller Street were voluntary and not the product of an interrogation, and may be admissible at trial.

### B. Defendant's Statements at the Public Safety Building

"A confession is admissible under the Constitution only if it is made voluntarily." *United States v. Orlandez-Gamboa*, 320 F.3d 328, 332 (2d Cir. 2003). "'No single criterion controls whether an accused's confession is voluntary: whether a confession was obtained by coercion is determined only after careful evaluation of the totality of the surrounding circumstances.'" *Nelson v. Walker*, 121 F.3d 828, 833 (2d Cir. 1997) (quoting *Green v. Scully*, 850 F.2d 894, 901 (2d Cir. 1988)). As the Second Circuit Court of Appeals has explained: "factors to be considered include: the characteristics of the accused, such as his experience, background, and education; the conditions of the interrogation; and the conduct of law enforcement officials, notably, whether there was physical abuse, the period of restraint in handcuffs, and use of psychologically coercive tactics." *Id.* at 833 (citing *Green*, 850 F.2d at 901-02). "Subsidiary questions, such as the length and circumstances of [an] interrogation . . . or whether the police engaged in the intimidation tactics alleged by the defendant, are entitled to the presumption of correctness." *Id.* (internal quotations and citations omitted) (alteration in original).

"A statement is not voluntary if it is obtained by any type of physical or psychological coercion or by improper inducement so that a defendant's will was overborne." *United States v. Santiago*, 720 F. Supp. 2d 245, 252 (W.D.N.Y. 2010) (citation omitted). "A confession is thus involuntary if it is obtained by techniques and methods offensive to due process, or under circumstances in which the suspect clearly

had no opportunity to exercise a free and unconstrained will." *United States v. Juvenile Male*, 968 F. Supp. 2d 490, 504 (E.D.N.Y. 2013) (internal quotations and citations omitted). However, "a confession is not involuntary merely because the suspect was promised leniency if he cooperated with law enforcement officials." *United States v. Guarno*, 819 F.2d 28, 31 (2d Cir. 1987).

Investigator Ferro testified at the suppression hearing that, after introducing himself and asking Defendant preliminary questions relating to his health and education level, he read Defendant his *Miranda* rights, and Defendant stated that he understood them. (Dkt. 24 at 13-17). Investigator Ferro testified that Defendant told him that he had the drugs and a gun at his house because he was "working off a contract with the Rochester Police Department, working for an undercover officer," and that he had drugs in his residence in order to complete his contract, because "you can't just hang around with these drug dealers and not have the stuff around. . . ." (*Id.* at 20). Investigator Ferro testified that Defendant told him that he obtained the gun found in his residence "off some guy who came knocking on his door." (*Id.*). Investigator Ferro reduced Defendant's story to writing, after which Defendant made corrections and signed the statement. (*Id.* at 22). Investigator Ferro denied making any promises to Defendant, threatening Defendant, or forcing Defendant to speak to him. (*Id.* at 19, 28-29). Investigator Ferro also testified that there was no discussion of Defendant's wife during the interview, other than Defendant stating that his wife was not involved with the drugs found at 54 Miller Street. (*Id.* at 21). Investigator Ferro further testified that he did not

have any authority to promise Defendant that his wife would not be charged with any crime. (*Id.* at 29).

In his affidavit submitted in support of his motion to suppress, Defendant states that Investigator Ferro told him that the police would not prosecute his wife if he signed a statement admitting to the drugs and gun found at his residence. (Dkt. 34 at 23). Defendant contends that he only signed the statement because he relied on Investigator Ferro's promise that the police would not arrest his wife. (*Id.*).

At the suppression hearing, Ms. Murray testified that she went to the Public Safety Building in a police car. (Dkt. 24 at 57). Ms. Murray also testified that she waited in a room for approximately 45 minutes while Defendant made his statement, and that an officer told her she could go "as soon as [her] husband was finished making a statement". (*Id.*). After Defendant made his statement, Ms. Murray was permitted to see him in the interview room, where she took his jewelry and left. (*Id.* at 58).

As an initial matter, the Court accepts Magistrate Judge Feldman's conclusion that, with regard to the events that transpired at the Public Safety Building, Investigator Ferro's live testimony was more credible than Defendant's affidavit. (Dkt. 33 at 10-11). *See Lawson*, 961 F. Supp. 2d at 499; *see also Carrion*, 549 F.2d at 588; *Cullen*, 194 F.3d at 407; *Grassia*, 892 F.2d at 19 (where a magistrate judge conducts a hearing and makes credibility findings on disputed issues of fact, the district court should ordinarily accept those findings). Because Investigator Ferro's testimony was credible and subject to cross-examination, the Court affords it more weight than it does Defendant's affidavit. *Robles*, 253 F. Supp. 2d at 549 n.14; *Juliano*, 2000 U.S. Dist. LEXIS 12149, at *9 n.1.

As noted above, the relevant inquiry in determining whether a statement is involuntary is whether the statement "is obtained by techniques and methods offensive to due process, or under circumstances in which the suspect clearly had no opportunity to exercise a free and unconstrained will." *Juvenile Male*, 968 F. Supp. 2d at 504 (internal quotations and citations omitted). Notably, a threat to charge or arrest a suspect's family member does not necessarily render a confession involuntary, particularly where the police have probable cause to arrest the family member and could lawfully carry out the threat. *United States v. Ortiz*, 943 F. Supp. 2d 447, 456 (S.D.N.Y. 2013); *United States v. Wyche*, 307 F. Supp. 2d 453, 464 (E.D.N.Y. 2004); *United States v. Melendez*, No. 14CR838-LTS, 2015 U.S. Dist. LEXIS 78894, at *14 (S.D.N.Y. June 17, 2015); *United States v. Perkins*, No. 12-CR-6006, 2013 U.S. Dist. LEXIS 166623, at *17 (W.D.N.Y. Oct. 11, 2013).

Nonetheless, Defendant contends that threats to arrest a defendant's family member often constitute impermissible coercion that may render a resulting confession involuntary, relying upon *Rogers v. Richmond*, 365 U.S. 534 (1961), *United States v. Finch*, 998 F.2d 349 (6th Cir. 1993), *United States v. Anderson*, 929 F.2d 96 (2d Cir. 1991) and *United States v. Moreno*, 891 F.2d 247 (9th Cir. 1989). (Dkt. 34 at 7-8).

*Anderson* concerned a threat to withhold cooperation credit, rather than a threat to the defendant's family. 929 F.2d at 97-98, 100. Although the *Rogers*, *Finch*, and *Moreno* cases address threats to a defendant's family members, those cases involve facts different than the present situation. For example, in *Rogers*, the Supreme Court of the United States reversed the defendant's conviction because it determined that the

Connecticut state courts applied a "constitutionally inadequate test" to determine whether the defendant's confession was voluntary; specifically, by considering the probable reliability of the confession as a circumstance to weigh when considering its voluntariness which "is not a permissible standard under the Due Process Clause of the Fourteenth Amendment." 365 U.S. at 541-48. Magistrate Judge Feldman's Report & Recommendation is clear that the proper standard was applied in this instance. (Dkt. 33 at 9-11).

Similarly, *Moreno* did not hold that applying moral and psychological pressures to the defendant by separating her from family members rendered the confession involuntary, but rather simply remanded the case for a hearing to examine the totality of the circumstances and determine the voluntariness of the confession (much like the hearing held by Magistrate Judge Feldman). 891 F.2d at 248. *See also Finch*, 998 F.2d at 355-56 (defendant's confession was coerced where totality of circumstances established that it was not voluntary, including based upon threats made to arrest family members).

What is clear from these cases is that where there is evidence that a confession was coerced, the district court must ensure that it is "screen[ed] in accordance with correct constitutional standards," *Rogers*, 365 U.S. at 545, and may "require[] a hearing and findings as to whether [a] . . . confession was voluntary," *Moreno*, 891 F.2d at 250. In this instance, Magistrate Judge Feldman employed the proper procedures to make an informed determination of whether Defendant's confession was voluntarily given. At that hearing, the Government met its burden to establish that the confession was

voluntary, and in fact, the credible evidence did not support Defendant's contention that he was somehow threatened or his wife was threatened.

As a result, the Court concludes that Investigator Ferro's interaction with Defendant was not coercive, and Defendant's statement was voluntarily made after he was advised of his *Miranda* rights. Further, neither the testimony by Investigator Ferro nor the testimony by Ms. Murray supports Defendant's contention that Investigator Ferro coerced him into making a statement by promising that Ms. Murray would not be charged with a crime. Because Defendant's oral and written statements at the Public Safety Building were voluntarily made and not the product of coercion, they may be admissible at trial.

## CONCLUSION

For the foregoing reasons, Magistrate Judge Feldman's Report & Recommendation filed on October 26, 2015 (Dkt. 33), is adopted in its entirety. Defendant's motion to suppress statements is denied.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
United States District Judge

Dated:   December 4, 2015
         Rochester, New York